IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROXANNE SELLARDS, *et al.*, *on behalf of herself and all others similarly situated*, | ) ) ) | Case No. 1:20-CV-02676 |
| | ) | JUDGE CHARLES E. FLEMING |
| Plaintiffs, | ) ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| v. | ) ) | |
| MIDLAND CREDIT MANAGEMENT, INC., *et al.*, | ) ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

In 2015, the Lake County Court of Common Pleas approved a class action settlement against defendant Asset Acceptance, LLC that prohibited the defendants from conducting specified debt collection activities against members of the class. *See* ECF Doc. 34-1 at 1-2. Subsequently, plaintiff Roxanne Sellards, a member of state court class action, filed a complaint alleging that defendant Asset Acceptance, LLC and the related defendants[1] ("collectively "defendants") violated the state class action settlement by engaging in prohibited collection activities against herself and other similarly situated members of the original state court class. *Id.* at 2.  Sellards initially filed her complaint in Lake County, and the defendants removed the action to this court.  *Id.* at 2-3.  After reaching an agreement following three mediation sessions, the parties now jointly seek preliminary approval of a class action settlement (ECF Doc. 34).  For

---

[1] Midland Credit Management, Inc.; Encore Capital Group, Inc.; Kimberly A. Klemenok; and Nevenka Pavlovic are also defendants, and are related through various corporate structures.  *See* ECF Doc. 1-1 at 5-7; ECF Doc. 34-1 at 2.

the reason below, I recommend that the court certify the class and preliminarily approve the settlement.

## I.    Background

### A.    Factual and Procedural Background

On October 30, 2020, Sellards filed a class action complaint in Lake County Court of Common Pleas on behalf of those similarly situated members of a prior class action settlement in *Asset Acceptance, LLC v. Caszatt*, Lake County, Ohio Court of Common Pleas, No. 08-CV-002587 ("Caszatt Litigation" or "Caszatt Settlement") against the defendants.  ECF Doc. 1-1 at 9-10.  The complaint alleges that it is brought:

> [O]n behalf of Plaintiff and other similarly situated Consumers who were entitled to a cessation of court action in accordance with the [Caszatt Settlement], but who were nonetheless subjected to such court actions on or after April 6, 2015, and to other unlawful collection related practice described in the Complaint.

ECF Doc. 1-1 at 9.

Sellards alleges that the defendants breached the Caszatt Settlement by engaging in debt collection activities – prohibited under the settlement agreement – against herself and the class members.  ECF Doc. 1-1 at 6-7.  The defendants' collection activities, Sellards contends, violated the original settlement agreement and, relatedly, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; and Ohio's Consumer Sales Practices Act ("CSPA"), Ohio Rev. Code § 1345; and constituted a host of state law tort claims.  *See* ECF Doc. 1-1 at 11-13.

The defendants removed the case to federal court based on federal question jurisdiction under 28 U.S.C. 1331.  ECF Doc. 1.  Sellards amended her complaint to include additional proposed class members.  *See* ECF Doc. 8.

On March 19, 2021, the defendants moved to stay the proceedings.  *See* ECF Doc. 17. They alleged a contempt motion had been filed in the Caszatt Litigation based on the same

operative facts and "the outcome in that case will necessarily resolve any and all claims asserted by Plaintiff."  ECF Doc. 17 at 1.  While the motion was pending, the parties participated in a settlement conference, but were unable to reach a settlement.  ECF Doc. 20.

On January 10, 2022, the court granted the defendants' stay, over Sellards's opposition. ECF Doc. 22.  While the stay was in place, the state trial court in the Caszatt Litigation issued a contempt citation against the defendants for violation of the Caszatt Settlement.  ECF Doc. 34-4 at 1.

On September 27, 2022, this court lifted the stay.  ECF Doc. 23.  The parties reached a settlement in principle after two mediations with Magistrate Judge Greenberg, prompting the instant motion for preliminary approval of the proposed class settlement.

The parties implicitly seek class certification as part of their motion for preliminary approval of the class settlement.  Accordingly, we must conduct a full analysis of the prerequisites for class certification under Rule 23(a) and (b), as well as the requirements for preliminary settlement approval under Rule 23(e).

### B.    Summary of Proposed Settlement

The parties negotiated a settlement in principle ("Settlement").  ECF Doc. 34-1.  The Settlement provides for a Gross Settlement Fund of $500,000, which includes $60,000 in Attorneys' Fees and Expenses and $15,000 incentive to Sellards, as class representative.  ECF Doc. 34-1 at 9-10.

The proposed settlement class is less than concisely stated in the settlement agreement.  It states that "'Class Members' means the 238 individuals identified on Exhibit 1 [a list of individuals under the Caszatt Settlement who were entitled to relief]."  ECF Doc. 34-1 at 5. However, review of the complaint and settlement agreement makes the intended settlement class

clearer: the class membership consists of the 238 individuals, encompassed in the Caszatt Settlement class membership, who did not receive payment under the Caszatt Settlement but were entitled to the settlement agreement's protections and yet had debt collection activities by the defendants taken again them, in violation of the Caszatt Settlement Agreement. *See* Doc. 1-1 at 9; *see generally* ECF Doc. 34-1.

The Net Settlement fund, from which the Class Members who do not opt-out will be paid, consists of the Gross Settlement Fund minus the attorneys' fees and costs and the incentive to Sellards.  ECF Doc. 34-1 at 9.  The Net Settlement funds will be distributed on a *pro rata* basis to the Class Members who do not opt-out.  *Id.* at 9-10.

The defendants will be responsible for reaching Class Members regarding the settlement notice, including the instructions for opting-out, and fund distribution.  *Id.* at 10.  They shall do so via First Class U.S. Mail.  *Id.*  In the event there is an alternate address listed for a class member, the defendants shall first reach out to the class member's primary address and, only if unsuccessful, will the defendants use the alternative address.  *Id.* at 11.  In all other regards, Class Counsel will be responsible for administration of the class.  *Id.*  Any settlement funds not distributed will be donated to the National Association of Consumer advocates.  *Id.*at 15.

## II.    Standard of Review

Class actions are governed by Federal Rule Civil Procedure 23.  Subsection (e) identifies the requirements for preliminary approval of a settlement prior to class members receiving notice, employing a two-step approval process.  First, the court must approve the sending of notice to class members under subdivision (e)(1) and (2).  Second, the court must hold a hearing and approve the proposed settlement under subdivision (e)(2).  This process applies regardless of

whether the class has been certified.  *See Peck v. Air Evac EMS, Inc.*, No. 5:18-CV-615, 2019 U.S. Dist. LEXIS 119011, at *6 (E.D. Ky. Jun. 5, 2019).

When the court has not certified the class, the "notice required under Rule 23(e)(1) should then also satisfy the notice requirements of amended Rule 23(c)(2)(B) for a class to be certified under Rule 23(b)(3) [the theory under which the parties seek certification in this action], and trigger the class members' time to request exclusion.  Information about the opt-out rate could then be available to the court when it considers final approval of the proposed settlement." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note (2018 Amendment).

Accordingly, we must analyze whether to recommend that the court find that it "will likely be able to" certify the class for purposes of the judgment on the proposal and approve the proposed settlement under Rule 23(e)(2).  Fed. R. Civ. P. 23(e).  Should I find affirmatively for both, I will then consider whether the notice satisfies Rule 23(c)(2)(B).

## III.  Preliminary Class Certification

Prior to preliminarily approving a class action settlement, the court must preliminarily (i) certify the class under [Rule 23], (ii) appoint counsel, and (iii) approve the class representative.  *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007).

To preliminarily approve a class certification, the court must consider whether it would be able to approve that class certification for purposes of a judgment.  *See* Fed. R. Civ. P. 23(e)(1)(B)(ii).  Accordingly, the court should consider the likelihood of approving a class certification under Rule 23(a) and (b).  *Peck*, 2019 U.S. Dist. LEXIS 119011, at *20-21.

Rule 23(a) imposes four requirements that a proposed class action must meet: numerosity, commonality, typicality, and adequacy of representation.  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  After a plaintiff shows that its proposed class action satisfies

subsection (a), it must then show that its class action may proceed under one of Rule 23(b)'s theories.  *Glazer v. Whirlpool Corp.*, 722 F.3d 838, 851 (6th Cir. 2013).  The court must apply a "rigorous analysis" to determine whether Rule 23's prerequisites are met.  *Peck*, 2019 U.S. Dist. LEXIS 118626, at *6 (citing *Glazer*, 722 F.3d at 851).  "There is a heightened standard for certification of a settlement-only class."  *Id.*

### A.      Rule 23(a) Analysis

Rule 23(a) establishes the four prerequisites for class certification, permitting the court to certify a class only if:

(1)      [T]he class is so numerous that joinder of all members is impracticable;

(2)      [T]here are questions of law or fact common to the class;

(3)      [T]he claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)      [T]he representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

There is no numerical test for numerosity.  *Glazer*, 722 F.3d at 852.  Rather, courts look to the "impracticability of joinder" – in essence, the unwieldiness of joining all the parties. *Golden v. City of Columbus*, 404 F.3d 950, 965-66 (6th Cir. 2005) (internal citations and quotation marks omitted).  The factors of commonality, typicality, and fair representation often overlap because they require the court to consider the similarity of the claims among the class members and to the proposed class representative.  *See Glazer*, 722 F.3d at 853.  Commonality looks to whether the class members "have suffered the same injury."  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (internal quotation marks omitted).  When looking at whether common questions unite a class, the court must consider specifically whether the

resolution of the common questions will advance the litigation.  *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998).

Typicality looks at whether the class representative's injury is also suffered by the proposed class members, and suffered in such a way that the "representative['s] interests are aligned with the interests of the class members so that, by pursuing their own interests, the class representative[] also advocate[s] the interests of the class members."  *Glazer*, 722 F.3d at 852-853 (citing *Sprague*, 133 F.3d at 399).  Adequate representation looks at the question of advocacy by the class representative, but encompasses the competency of class counsel and potential conflicts of interest.  *Id.* at 853 (citing *Dukes*, 564 U.S. at 349 n.5).  Specifically, the adequacy of representation factor consists of a two-part test, determining that: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representative[] will vigorously prosecute the interests of the class through qualified counsel."  *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976).

The parties have demonstrated that the proposed class meets Rule 23(a)'s requirements.  The proposed class of 238 members meets Rule 23(a)'s numerosity requirements.  *See Walburn v. Lend-A-Hand Servs., LLC*, No. 2:19-CV-00711, 2020 U.S. Dist. LEXIS 91853, at *9 (S.D. Ohio May 26, 2020) (finding that a class of 54 members satisfied the numerosity requirement).  The identity of the proposed 238 class members need not be speculated upon but simply drawn from the Caszatt Litigation.  I find that joinder of 238 individual to a singular lawsuit would be impractical.

Further, the parties have also shown that the proposed class meets the commonality and typicality requirements.  The heart of the parties' dispute arises from the alleged breach of the Caszatt Settlement Agreement, which would have affected all proposed class members in this

action, because they were beneficiaries thereof.  In other words, the instant proposed class is a

subset of the class involved in the Caszatt Settlement Agreement.  Accordingly, the class

members share a common question of law: did the defendants breach the Caszatt Settlement

Agreement, as alleged in Sellards's claims.  *See Dukes*, 564 U.S. at 349-50.  And Sellards's

claims are typical of the claims that could be asserted by the proposed class because they arise

from the same or substantially similar conduct.  *See Glazer*, 722 F.3d at 852-853.

Finally, as to Sellards as a class representative, as noted above, Sellards has a claim

typical of all class members.  Nothing in the present record indicates Sellards's interest would

conflict with the interests of the putative class members.  Although Sellards's incentive payment

raises a question as to the settlement's fairness, which will be discussed further below, it does not

call into question Sellards's good faith in prosecuting this action on behalf of the class.  *See*

*Senter*, 532 F.2d at 525.  Moreover, the proposed class counsels' uncontested experience with

class actions and this action specifically, does not indicate that they are incompetent in bringing

the action or are conflicted.  *See Glazer*, 722 F.3d at 853.

**B.**     **Rule 23(b)**

Once the court concludes Rule 23(a) has been satisfied, the court must then determine

whether the proposed class action meets one of the types of class actions outline in

subsection (b).  The parties seek to proceed under Rule 23(b)(3).  Rule 23(b)(3) permits class

certification if:

> (3)     [T]he court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that
> a class action is superior to other available methods for fairly and efficiently
> adjudicating the controversy.   The matters pertinent to these findings
> include:
>
> > (A)     [T]he class members' interests in individually controlling the
> > prosecution or defense of separate actions;

8

     (B)     [T]he extent and nature of any litigation concerning the controversy already begun by or against class members;

     (C)     [T]he desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

     (D)     [T]he likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

As discussed above, the class members share a common question of law – whether the defendants breached the Caszatt Settlement Agreement to the detriment of the putative class members by conducting prohibited collect activities.  Further, should all of the putative class members participate in the proposed settlement, each would receive $1,590.10 from the settlement funds.  With such modest claims, it is unlikely that the individual class members would independently pursue their claims.  *See Glazer*, 722 F.3d at 861 (weighing that the class members would not pursue individual actions in determining whether Rule 23(b)(3) was met).  Nor has any "fatal dissimilarity" been identified among the class members.  *See Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 470 (2013) (internal quotation marks omitted).  Additionally, the minimization of time and expense the litigation of these claims as a class action allows supports the predominance and superiority factors in Rule 23(b)(3).  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 41 (2013) ("[W]hen adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate.") (Ginsburg, J. and Breyer, J. dissenting).  Thus, maintaining this case as a class action will streamline the litigation.

Accordingly, the parties have demonstrated that the proposed class satisfies the requirements of Rule 23(a) and (b), and I recommend that the court preliminarily certify the class for purposes of settlement.

## IV.     Preliminary Approval of Settlement

### A.     Class Representative

The Sixth Circuit has stated that incentive awards to class representatives may be appropriate in some circumstances.  *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003).  "Courts within the Sixth Circuit [] recognize that, in common fund cases and where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond the amounts to which they are entitled to by virtue of class membership alone."  *Lonardo v. Travelers Indem. Co.*, 706 F. Supp.2d 766, 787 (N.D. Ohio 2010) (citations omitted).  "Generally, courts that have awarded incentives to class representatives have done so to encourage members of a class to become class representative for their 'often extensive involvement with a lawsuit.'"  *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-CV-638, 2014 U.S. Dist. LEXIS 15606, at *29 (S.D. Ohio Feb. 7, 2014) (quoting *Hadix*, 322 F.3d at 897).  But if the incentive payment to the class representative is disproportionate to the benefits awarded to the unnamed class members, "such inequities in treatment make a settlement unfair."  *Id.* (citing *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013); *Holmes v. Cont. Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983); and *Plummer v. Chem. Bank*, 91 F.R.D. 434, 442 (S.D. N.Y. 1981)).

Sellards's incentive does raise a question as to the settlement's fairness and her adequacy as a class representative.  Although, as noted above, her claims are typical of the class, Sellards is receiving a significant incentive for her role as a class representative.  Should every class member participate, they are estimated to receive a little over $1,500.  *See* ECF Doc. 34-1 at 10.  In contrast, Sellards will receive the class member relief under the settlement plus an incentive

10

payment of $15,000.  As a result, Sellards's award is disproportionate to the benefit provided to unnamed class members.  *See Michel*, 2014 U.S. Dist. LEXIS 15606, at *29.  Sellards participated in both mediations, but the case was also limited in its activity due to the stay.  ECF Doc. 27; ECF Doc. 28.  Consequently, Sellards's involvement in the case was far from negligible, but was not as extensive as it might have been, had the case not been stayed and discovery taken place.

When the incentive payment make the class representative more than whole, the court must be "most dubious" because the incentive gives the class representative "no reason to care whether the mechanisms available to unnamed class members can provide adequate relief."  *In re Dry Max Pampers*, 724 F.3d 713, 722 (6th Cir. 2013).  Here, Sellards's incentive payment would be 10 times that of the class members.  But in consideration of Sellards's participation in the mediations, her efforts at retaining counsel and in filing the case, her award does not reflect the type of disproportionality typically requiring the court to step in.  *See Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 U.S. Dist. LEXIS 207678, at *13-14 (E.D. Mich. 2018) (reducing the class representatives award from 50 times to 20 times the class members' awards); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *14-15 (S.D. Ohio May 25, 2013) (approving a $12,500 incentive based on the class members receiving proportionally more than the statutory minimum).  Further, comparing the raw numbers cannot be the sole yardstick for determining the fairness of an incentive payment.  Whenever the sum needed to make individual class members whole is relatively small, even a modest incentive payment, as here, will always be a large multiple of the compensatory payment to class members.  Accordingly, I find that the $15,000 incentive to Sellards is appropriate.

### B.    Class Counsel

Under Rule 23(c)(1)(B), when certifying a class action, the court must appoint class counsel under Rule 23(g).  Rule 23(g) requires the court to look at four factors in determining the sufficiency of class counsel:

> (i)     [T]he work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    [C]ounsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)   [C]ounsel's knowledge of the applicable law; and
>
> (iv)    [T]he resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Additionally, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class" and, the order may also award attorney's fees and costs.  Fed. R. Civ. P. 23(g)(1)(B), (D).  I find that the parties have, albeit implicitly, also moved for the court to award attorney's fees and costs, pursuant to Fed. R. Civ. P. 23(h).  Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards.  Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award."  Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note (2018 Amendment).

The parties jointly seek the appointment of Robert S. Belovich and Anand N. Misra as class counsel.  ECF Doc. 34 at 10.  The parties assert that Belovich and Misra are experienced counsel, have handled multiple class action cases, and have been experienced with this particular litigation, having handled the case since its filing.  *See* ECF Doc. 1-1 at 16; ECF Doc. 34 at 10. The court is aware of no evidence to the contrary.  Further, as discussed below in considering the adequacy of the relief, the attorneys' fees and costs sought are appropriate.  Based on the above,

and counsels' litigation of the case thus far, I recommend that the court find that both Belovich and Misra satisfy the requirements of Rule 23(g) and designated them as Class Counsel.

### C.      Certification/Approval of Settlement

Following the certification of a class, the court may approve a settlement.  *See Peck*, 2019 U.S. Dist. LEXIS 118626, at *14.  There are three steps for preliminarily approving a class action settlement:

(1)      Preliminary approving of the proposed settlement, "i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion;"

(2)      Giving notice of the settlement to class members; and

(3)      Conducting a fairness hearing.

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-566 (6th Cir. 2001).

### 1.      Approval of Settlement

Prior to preliminarily approving a settlement, the court must determine that the proposed settlement would be "fair, reasonable, and adequate."  *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016).  Rule 23(e) and Sixth Circuit precedent provide factors for determining whether a proposed settlement meets the "fair, reasonable, and adequate" standard. *See* Fed. R. Civ. P. 23(e); *UAW*, 497 F.3d at 631.  Rule 23(e)'s factors are not to "displace" the circuit court's historic considerations and, accordingly, I will consider each.  *See* Advisory Committee Notes to Rule 23(e) (2018).

### a.      Rule 23(e) Factors

Rule 23(e) outlines factors to determine whether a proposed settlement is fair, reasonable, and adequate:

(A)      [T]he class representatives and class counsel have adequately represented the class;

13

(B)  [T]he proposal was negotiated at arm's length;

(C)  [T]he relief provided for the class is adequate, taking into account:

    (i)  [T]he costs, risks, and delay of trial and appeal;

    (ii)  [T]he effectiveness of any proposed methods of distributing relief to the class, including the method of processing class-member claims;

    (iii)  [T]he terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)  [A]ny agreement required to be identified under Rule 23(e)(3); and

(D)  [T]he proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### *Adequacy of Representation & Negotiation*

The parties have not identified any dispute related to the representation or negotiation in this matter and the three separate mediation conferences and use of an independent mediator support the finding that counsel provided adequate representation and negotiated at arm's length. *See, e.g.*, *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties."). And the parties have, effectively, stipulated that Sellards's counsel – the proposed class counsel – are qualified to serve in that role. Moreover, Sellards's counsel participated in the underlying state-court litigation and in three settlement conferences, and there is no concern about collusion. *See Peck*, 2019 U.S. Dist. LEXIS 118626, at *16.

### *Adequacy of Relief*

Although the court's analysis of a settlement agreement does not reach the ultimate issues on the merits, the court must still "specifically examine what the unnamed class members would

14

give up in the proposed settlement, and then explain why – given their likelihood of success on

the merits – the trade-off embodied in the settlement is fair." *Doe v. Déjà Vu Consulting, Inc.*,

925 F.3d 886, 895-896 (6th Cir. 2019) (internal quotation marks omitted).  Although the state

trial court held the defendants in contempt of the Caszatt Settlement Agreement, the outcome of

any *federal* trial proceedings would have been contested and uncertain.  *See id.* ("it is the very

uncertainty of [the] outcome in litigation and avoidance of wasteful and expensive litigation that

induce consensual settlements." (quoting *Officers for Justice v. Civil Serv. Comm'r of City &*

*Cty. Of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).  But the unnamed class members are

also receiving what is practically the maximum relief they could have been awarded had they

gone to trial.  Under the FDCPA, $500,000 or 1% of a defendant's company value is the

maximum amount of relief available to the defendants for class actions.  *See* 15 U.S.C.

§ 1692k(a)(2)(B)(ii).  Moreover, the "value" of the unnamed class members' claims individually

(being 1/238th of the $425,000 remaining after deduction of attorneys' fees and Sellards's

incentive payment) renders individual litigation of each claim unlikely.  Thus, the "costs, risks,

and delay of trial and appeal" support the court finding that the negotiated settlement was "fair,

reasonable, and adequate."

Further, the parties' proposed communications with the class members are reasonable.

The parties identified the class members and their addresses based on the Caszatt Litigation.  *See*

ECF Doc. 34-2.  Due to their involvement in the Caszatt Litigation, the parties are aware that 30

of the addresses were inaccurate.  *See* ECF Doc. 36 at 2.  In the settlement agreement, the

defendants state that they will make additional efforts at ensuring they use current, valid

addresses for each of the class members.  ECF Doc. 34-1 at 13.  Based on those efforts and the

information already available, the parties propose to send the notice, which includes the opt-out

information, and, later, the settlement distributions to the class members via First Class U.S. mail.  ECF Doc. 34-1 at 10.  I find this proposal reasonable.

Additionally, Sellards's counsel seek attorneys' fees and costs of $60,000, which represents only 12% of the total settlement funds.  "The 'majority of common fund fee awards fall between 20% and 30% of the fund.'"  *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 426 (6th Cir. 2012) (quoting *Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291, 1294 (11th Cir.1999)).  The attorneys' fees in this case fall well below this range; thus, I find the attorneys' fees reasonable.  *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note (2018 Amendment).  Moreover, the parties specified that:

> No other agreement, written or oral, expressed or implied, exists between the Parties with respect to the subject matter of this agreement, and the Parties declare and represent that no promise, inducement, or other agreement not expressly contained in this Agreement has been made conferring any benefit upon them.

ECF Doc. 34-1 at 19.  I find no indication to the contrary.  And, thus, there are no side agreements for the court to review.  Accordingly, I find that the settlement agreement provides adequate relief to the class members.

***Equitable Treatment***

The court must determine under Rule 23(e)(2)(D) whether the proposed settlement "treats class members equitably relative to each other."  The proposed settlement intends to distribute the settlement funds (minus the attorneys' fees and class representative's incentive payment) on a *pro rata* basis among the class members.  *See* ECF Doc. 34-1 at 9-10.  Thus, the class members will all be treated equally to each other.

Accordingly, I find that the Rule 23(e)'s factors weigh in favor of finding the proposed settlement agreement fair, reasonable, and adequate.

16

b. **Sixth Circuit Factors**

Before the amendment of Rule 23(e), the Sixth Circuit outlined the following factors used in reviewing class actions:

> To determine whether a settlement agreement satisfies Rule 23's fairness standard, we consider: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (quoting *UAW*, 497 F.3d at 631).

As discussed in more detail above, there is no evidence that the parties colluded with each other, or that the settlement is the result of fraud. Further, the case has been before the court for three years, albeit stayed for a portion of that time. Due to that stay, the parties were likely able to reach a resolution more swiftly than they otherwise might have. And reviewing how the defendants' conduct affected each class member – for purposes of this litigation – would undoubtedly be a costly and time-consuming prospect. Relatedly, the fact that the parties have only undertaken informal discovery may normally be a source of concern for the court. *See Olden v. Gardner*, 294 F. App'x 210, 218 (6th Cir. 2008) ("[W]ithout expert opinions or formal discovery . . . the class counsel could not have entered into the settlement negotiations with much more than an uneducated guess as to the merits of the case and the propriety and fair value of a settlement."). However, the underlying state court proceedings casts the parties' choice to avoid formal discovery in this action in a new light. Rather than resulting in a lack of knowledge, the parties' involvement in both the Caszatt Litigation and the instant action results in the avoidance of what would likely be duplicative discovery. Accordingly, the informal discovery the parties have completed supports the value of the settlement.

The parties' likelihood of success on the merits is discussed in greater detail above.  But the class members have received, in effect, the largest settlement possible under the FDCPA.  And, even with the state court's grant of the contempt citation against the defendants, there is no guarantee that the outcome of federal litigation would be the same.  Accordingly, the parties have established that the settlement agreement promotes the equitable resolution of disputed claims, the fact of which satisfies the court's concern in reviewing the likelihood of success.  *See Déjà Vu Consulting*, 925 F.3d at 895-896; *UAW*, 497 F.3d at 632 ("Our task is not to decide whether one side is right . . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement.").

As a joint motion, counsel for both parties seek approval of the settlement agreement, and their opinions are entitled to deference.  *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference.").  Further, because this is a motion for preliminary approval of the settlement, consideration of absent class members' reactions is, currently, impossible.  It can be considered at the fairness hearing.

As to the public interest, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable, and settlement conserves judicial resources."  *Déjà Vu Consulting*, 925 F.3d at 899 (internal quotation marks omitted).  I find that the settlement agreement promotes the public's interest in the resolution of the class action and will encourage companies to comply with debt collection laws.  *See id.* (considering the public's interest in ensuring employers comply with the Fair Labor Standards Act).

Accordingly, I find that under the Sixth Circuit's factors, the proposed settlement agreement should be approved.

### 2. Notice

The parties have attached their proposed notice and opt-out form to the joint motion for class certification and preliminary approval.  ECF Doc. 34-4.  Rule 23(c)(2)(B) requires that the notice:

> [M]ust clearly and concisely state in plain, easily understood language:
>
> (i)     [T]he nature of the action;
>
> (ii)     [T]he definition of the class certified;
>
> (iii)     [T]he class claims, issues, or defenses;
>
> (iv)     [T]hat a class member may enter an appearance through an attorney if the member so desires;
>
> (v)     [T]hat the court will exclude from the class any member who requests exclusion;
>
> (vi)     [T]he time and manner for requesting exclusion; and
>
> (vii)     [T]he binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Under Rule 23(e), the notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *UAW*, 497 F.3d at 629-30 (internal quotation marks omitted).

On review of the parties' proposed notice, the notice fails to satisfy all the Rule 23(e)'s requirements.  The notice adequately identifies the nature of the action, a class member's option to enter an appearance through an attorney, a class member's ability to be exclude by opting-out, the time and manner for opting-out, and the binding effect of the class judgment.  ECF

Doc. 34-4.  However, the notice provides no substantive definition of the class claims, issues, or defenses or of the certified class, as discussed above regarding class certification.

Additionally, the parties have disputed two sentences in the notice describing the case's proceedings.  Specifically, the parties dispute the inclusion of the following:

> Proceedings in this case were stayed while the Lake County Court of Common Pleas addressed a contempt motion for violations of the Caszatt Final Order.  On September 1, 2022, Lake County Judge John P. O'Donnell issued an order finding Asset Acceptance in contempt of court for having violated the Caszatt Final Order.

I find that inclusion of the disputed notice language will better serve Rule 23(e)'s goal of providing reasonable notice to the class members.  Defendants contend that the additional language may confuse class members.  However, omission of the language, I find, would create an even greater potential for confusion by failing to explain the relationship between the Caszatt Litigation and the instant proceeding.  Plaintiffs assert that some class members may be unaware of the Caszatt Litigation.  If so, this notice may be the first instance in which the class member hears of the Caszatt contempt order *and* the instant settlement.  Consequently, the additional language provides greater clarity as to the relationship between the Caszatt Litigation, the instant class action, and the member's role in each.

The potential ambiguity in the notice also speaks to why a greater description of the class is necessary.  Presently, the notice defines the class by stating: "You are receiving this notice because you are one of the 238 members of the Class."  But the notice fails to provide any further explanation of the class.  The notice does marginally better in explaining the claims in the lawsuit, stating "This Lawsuit is about the Plaintiff's allegations that Defendants collected and attempted to collect debts from Ohio consumers that were prohibited by the terms of the final ordered [entered in the Caszatt Litigation]."  Further, in describing the settlement, the notice simply states what the defendants will pay and the amounts broken down between the class

20

members, the class representative, and the class counsel.  It does not identify any of Sellards's

specific claims or that those claims would be released against the defendants.  *Compare to Déjà*

*Vu Consulting*, 925 F.3d at 900-901 (affirming that the notice did not mischaracterize the scope

of the release by identifying the claims the plaintiffs would not be pursuing and the release of

future claims).

Consequently, I find that the notice requires some alterations to fully satisfy Rule 23.

Specifically, in addition to the inclusion of disputed notice language, I recommend adding the

following class definition:

> The Class membership consists of the 238 individuals, encompassed in the class
> membership subject to the Caszatt Final Order (discussed below), who did not
> receive payment under the Caszatt Final Order but were entitled to the order's
> protections and yet had debt collection activities by the Defendants taken again
> them.

Finally, as to the notice's description of the claims and release, I recommend adding the

following language:

> The lawsuit alleges that the Defendants violated the Caszatt Final Order, in addition
> to the Fair Debt Collection Practices Act, the Ohio Consumer Protections Act, and
> various other state laws.  In exchange for the class member's release of those
> claims, the defendants agree to pay $500,000.

### 3.    Fairness Hearing

Lastly, under Rule 23, the court must hold a fairness hearing to consider any objections

from class members.  Following the district court's ruling, a hearing will be scheduled along

with all relevant deadlines for issuing the notice and deadlines for opting-out of the settlement.

## V.    Conclusion

For the reasons stated herein, I recommend that the court find:

(1)    That the court will likely be able to approve the settlement agreement on behalf of
the class members;

(2)     That the court will likely be able to certify the proposed class for the purposes of judgment on the proposed settlement agreement only;

(3)     The court approve the proposed notice and opt-out form attached, with the undersigned magistrate judge's proposed corrections to satisfy Rule 23;

(4)     The court approve First Class United States Postal Mail as a means of distributing notice to the Class Members, to be disseminated within 60 days of the entry of the primarily approval; and

I have attached revised versions of the notice and settlement agreement, reflecting my recommended changes.  Should the district court adopt my recommendations, following the order, a scheduling order will be issued regarding the issuance of the notice, timing for class members to opt-out, and a fairness hearing.

Dated: May 2, 2023

Thomas M. Parker
United States Magistrate Judge

_____

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C. § 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard*

*v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).